K1D8EDWP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                    19 Cr. 64 (GHW)

NATALIE MAYFLOWER SOURS EDWARDS,

              Defendant.

------------------------------x
                                        New York, N.Y.
                                        January 13, 2020
                                        2:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                        District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  KIMBERLY J. RAVENER
     DANIEL c. RICHENTHAL
     MAURENE R. COMEY
     Assistant United States Attorneys

BRAFMAN & ASSOCIATES, P.C.
     Attorneys for Defendant
BY:  MARC A. AGNIFILO
     JACOB KAPLAN


Also present:

        DAVID GOODWYN, Special Agent,
         Department of Treasury, Office of Inspector General
        JOHN VOURDERIS, Special Agent, FBI

K1D8EDWP

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your names

3     for the record.

4           MS. RAVENER:  Good afternoon, your Honor.  Kimberly

5     Ravener, Daniel Richenthal, and Maurene Comey for the

6     government.  Joining us at counsel table are Special Agent

7     David Goodwyn of the Department of Treasury, Office of

8     Inspector General, as well as Special Agent John Vourderis of

9     the Federal Bureau of Investigation.

10           THE COURT:  Thank you.  Good afternoon.

11           MR. AGNIFILO:  Good afternoon, your Honor.  I am Marc

12     Agnifilo.  I am with Jacob Kaplan, and our client is Dr.

13     Edwards, who is here today.

14           THE COURT:  Thank you very much.  Good afternoon.

15           So, first, Dr. Edwards, I have been informed that you

16     wish to plead guilty to Count One of the information that's

17     numbered 19 Cr. 64.  Is that correct?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Thank you.

20           Before I accept your guilty plea, I am going to ask

21     you a number of questions so that I can establish to my

22     satisfaction that you wish to plead guilty because you are in

23     fact guilty and not for some other reason, and also to ensure

24     that you know what rights you will be giving up if you choose

25     to proceed and enter a guilty plea in this case.

K1D8EDWP

1          If you don't understand any of my questions, or if you

2    would like to confer with your counsel at any time and for any

3    reason during the course of today's conference, please do not

4    hesitate to let me know.  I would be happy to permit you as

5    much time as you like to confer with your counsel, and I would

6    be happy to clarify any of my questions if it would be helpful

7    for you.

8          So, first, Dr. Edwards, because I am going to ask you

9    a number of questions, I would like to ask you to please stand

10   to take an oath to answer my questions truthfully.

11          (Defendant sworn)

12          THE COURT:  You can be seated.

13          Dr. Edwards, you are now under oath, which means that

14   if you answer any of my questions falsely, you can be

15   prosecuted for the separate crime of perjury or making false

16   statements.  The government would have the right to use any

17   statements that you make under oath against you in such a

18   prosecution.

19          Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Thank you.

22          So, first, can you please tell me your full name.

23          THE DEFENDANT:  Dr. Natalie Mayflower Sours Edwards.

24          THE COURT:  How old are you?

25          THE DEFENDANT:  41.

K1D8EDWP

| | |
|---|---|
| 1 | THE COURT:  Where were you born? |
| 2 | THE DEFENDANT:  Richmond, Virginia. |
| 3 | THE COURT:  How far did you go in school? |
| 4 | THE DEFENDANT:  Ph.D. |
| 5 | THE COURT:  Can you describe for me, please, briefly |

THE COURT:  Where were you born?

THE DEFENDANT:  Richmond, Virginia.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Ph.D.

THE COURT:  Can you describe for me, please, briefly
your employment experience.

THE DEFENDANT:  Yes.  I was a high school teacher.

From there, I went to Virginia Commonwealth University
as a professor.

From there, I went into the Department of Justice,
Alcohol, Tobacco, Firearms and Explosives.

From there, I went into the intelligence community.

And from there, I went into the Treasury Department.

THE COURT:  Thank you.

Dr. Edwards, have you ever been treated or
hospitalized for any mental illness?

THE DEFENDANT:  No, sir.

THE COURT:  Thank you.

Are you currently or recently been under the care of a
physician, psychiatrist or a psychologist?

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.

For what condition?

THE DEFENDANT:  Insomnia, clinical depression, and
anxiety.

K1D8EDWP

1          THE COURT:  Do any of those conditions impact in any

2     way your ability to understand what is happening in this

3     proceeding and your decisions in connection with the matters

4     that we will be addressing during the course of today's

5     proceeding?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Thank you.

8          Are you currently or have you recently been

9     hospitalized or treated for drug addiction?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Within the past 24 hours, Dr. Edwards,

12     have you used or taken any alcohol, drugs or medication?

13          THE DEFENDANT:  Prescribed.

14          THE COURT:  Thank you.

15          Does any of the medication that you are taking affect

16     in any way your ability to hear, to comprehend any of the

17     things that we are discussing here, or affect in any way your

18     ability to understand the matters that we will be taking up

19     during the course of today's hearing?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Thank you.

22          Is your mind clear today?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand what is happening in

25     this proceeding?

K1D8EDWP

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Dr. Edwards, have you received a copy of

3      the information that has been brought against you in this case?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Have you had enough of a chance to discuss

6      with your lawyers the case in general and, in particular, the

7      charge to which you intend to plead guilty and any possible

8      defenses to that charge?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Have your lawyers explained to you the

11     consequences of entering a plea of guilty?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Are you fully satisfied with your lawyers'

14     representation of you?

15             THE DEFENDANT:  Extremely satisfied.

16             THE COURT:  Counsel for defendant, let me turn to you.

17     Have you discussed this matter with your client?

18             MR. AGNIFILO:  I have, your Honor.

19             THE COURT:  Is she capable of understanding the nature

20     of these proceedings?

21             MR. AGNIFILO:  Yes, your Honor.

22             THE COURT:  Thank you.

23             Counsel, does either the government or counsel for the

24     defense have any doubt as to the defendant's competence to

25     plead at this time?

K1D8EDWP

1          MS. RAVENER:  No, your Honor.

2          MR. AGNIFILO:  Nor do I, your Honor.

3          THE COURT:  Thank you.

4          On the basis of Dr. Edwards's responses to my

5  questions, my observations of her demeanor here in court, and

6  the representations of counsel, I find that the defendant is

7  competent to enter a plea of guilty at this time.

8          Now, Dr. Edwards, before we turn to your plea, I am

9  going to explain a number of constitutional rights that you

10  have.  I do this because these are rights that you will be

11  giving up if you choose to proceed and enter a guilty plea in

12  this matter.  So please, again, listen carefully to what I am

13  about to say, and if you have any questions for me or your

14  counsel, please don't hesitate to let me know.  I would be

15  happy to pause and allow you to discuss any matter with your

16  counsel, and I again would be happy to clarify any of my

17  questions if it would be helpful for you.

18          So, first, Dr. Edwards, you have the right to plead

19  not guilty to the charges against you contained in the

20  information.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  If you did plead not guilty, you would be

24  entitled to a speedy and public trial by a jury on the charges

25  against you contained in the information.

K1D8EDWP

 1          Do you understand that?

 2          THE DEFENDANT:  Yes, sir.

 3          THE COURT:  At a trial, you would be presumed to be

 4    innocent and the government would be required to prove you

 5    guilty by competent evidence beyond a reasonable doubt before

 6    you could be found guilty.

 7          Do you understand that?

 8          THE DEFENDANT:  Yes, sir.

 9          THE COURT:  A jury of 12 people would have to agree

10    unanimously that you were guilty and you would not have to

11    prove that you were innocent if you were to go to trial.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  At trial, and at every stage of your case,

15    you would be entitled to be represented by a lawyer.  If you

16    could not afford a lawyer, one would be appointed for you at

17    public expense, that is, free of cost.

18          Do you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  During a trial, Dr. Edwards, the witnesses

21    for the government would have to come to court and testify in

22    your presence.  Your lawyer could cross-examine the

23    government's witnesses and object to evidence offered by the

24    government.

25          Do you understand that?

K1D8EDWP

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  At a trial, you would also have the

3     opportunity to offer evidence on your own behalf, if you wished

4     to do so, and you would have the right to compel witnesses to

5     come to court to testify in your defense.

6           Do you understand that?

7           (Defendant confers with counsel)

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  At a trial, you would have the right to

10    testify, if you chose to do so, but you would also have the

11    right not to testify; and if you decided not to testify, no

12    one, including the jury, could draw any inference or suggestion

13    of guilt from the fact that you did not testify.

14          Do you understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Do you understand that by pleading guilty,

17    you are giving up your right to seek suppression, that is,

18    exclusion from any trial of any evidence against you that the

19    government may have obtained improperly?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  If you are convicted at a trial, you would

22    have the right to appeal that verdict.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Even now, Dr. Edwards, as you are

K1D8EDWP

preparing to enter this plea, you have the right to change your
mind and to plead not guilty and to go to trial on the charges
contained in the information.

          Do you understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Thank you.

          Dr. Edwards, if you plead guilty, you will also have
to give up your right not to incriminate yourself.  I say that
because I expect that later during today's proceeding I will
ask you questions about what you did in order to satisfy myself
that you are guilty of the charged offense, and you will have
to admit and acknowledge your guilt.

          Do you understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Dr. Edwards, if you plead guilty and if I
accept your plea, you will give up your right to a trial and
all of the other rights that I have just discussed with you,
other than your right to a lawyer which you have regardless of
whether or not you plead guilty, but there will be no trial and
I will enter a judgment of guilty and ultimately a sentence on
the basis of your plea.  There will be no appeal with respect
to whether the government could use the evidence that it has
against you or with respect to whether you did or did not
commit this crime.

          Do you understand that?

K1D8EDWP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Thank you.

3          So, Dr. Edwards, we have just discussed a number of

4    important rights that you have.  Do you understand each and

5    every one of those rights?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Given all of that, Dr. Edwards, are you

8    willing to give up your right to a trial and the other rights

9    that I have just discussed with you?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Thank you.

12          Now, Dr. Edwards, I understand that you have received

13    a copy of the information containing the charges against you.

14          Can I ask, have you read the information?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Thank you.

17          Do you understand that Count One of the information

18    charges that from at least in or about October 2017 up to and

19    including in or about October 2018, in the Southern District of

20    New York and elsewhere, you conspired with others to make

21    unauthorized disclosures of suspicious activity reports, which

22    I will describe as SARs, and the existence of SARs, in

23    violation of 18, United States Code, Section 371?

24          Do you understand that that's the nature of the charge

25    against you?

K1D8EDWP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Thank you.

3          Counsel for the government, can I ask you to please

4    state the elements of that offense.

5          MS. RAVENER:  Yes, your Honor.

6          Were this case to proceed to trial, the government

7    would be required to prove the following elements beyond a

8    reasonable doubt:

9          First, that two or more persons entered the unlawful

10   agreement charged in the information.  Here, the unlawful

11   agreement was to make unauthorized disclosures of suspicious

12   activity reports, also known as SARs, in violation of Title 31,

13   United States Code, Section 5322, and 31 C.F.R., Section

14   1020.320(e)(2);

15         Second, the government would have to prove that the

16   defendant knowingly and willingly joined that agreement; and

17         Third, that one of the members of the conspiracy

18   knowingly committed at least one overt act to further the

19   conspiracy.  Here, the overt acts listed in the information

20   include the following:

21         On various occasions between, approximately, October

22   2017 and her arrest in October 2018, the defendant transmitted

23   files containing or describing SARs to a reporter via an

24   encrypted application;

25         On January 12, 2018, the defendant sent a message to

K1D8EDWP

that same reporter, via the same encrypted application, in

which she stated that another government employee had

previously identified data, or could pull data for that

reporter;

On August 2, 2018, the defendant exchanged 541

messages with the reporter via the encrypted application; and

On October 16, 2018, during an interview with federal

law enforcement agents, the defendant initially concealed her

relationship with the reporter and denied having any contacts

with the news media.

The government could also prove additional overt acts.

The elements of the offense that was the object or

goal of the conspiracy are as follows:

First, that the defendant was an employee of a federal

government authority.  Here, the United States Department of

Treasury, Financial Crimes Enforcement Network, which is also

known as FinCEN;

Second, that the defendant disclosed a SAR, or

information that would reveal the existence of a SAR, to

another person;

Third, that such disclosure was not authorized or

necessary to fulfill the defendant's official duties; and

Fourth, that the defendant acted knowingly and

willfully.

The government would also have to prove venue by a

K1D8EDWP

preponderance.  Here, by virtue of the plea agreement, the

defendant is waiving venue.

THE COURT:  Thank you.

So, Dr. Edwards, do you understand that if you were to

go to trial for this offense, that the government would be

required to prove all of the substantive elements of the charge

beyond a reasonable doubt?

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.

Do you understand that you have waived any issue

related to proper venue in the Southern District of New York?

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.

Now, Dr. Edwards, I am going to tell you the maximum

possible punishment for this crime.  The maximum means the most

that could possibly be imposed; it does not mean that it is

what you will necessarily receive.  But you have to understand

that by pleading guilty, you are exposing yourself to the

possibility of receiving any combination of punishments up to

the maximum that I am about to describe.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.

First, I am going to tell you about the possible

restrictions on your liberty.  The maximum term of imprisonment

K1D8EDWP

```
1    for this crime is five years, which could be followed by up to
2    three years of supervised release.  If you are sentenced to a
3    term of supervised release, you will be subject to the
4    supervision of the probation office.  There will be rules of
5    supervised release that you will have to follow, and if you
6    violate those rules, you can be returned to prison without a
7    jury trial to serve additional time, with no credit for any
8    time that you served in prison as a result of your sentence and
9    no credit for any time spent on post-release supervision.
10          Dr. Edwards, you should also understand that there is
11   no parole in the federal system and that if you are sentenced
12   to prison, you will not be released early on parole.
13          Do you understand that?
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  Thank you.
16          Second, in addition to these restrictions on your
17   liberty, the maximum possible punishment also includes certain
18   financial penalties.  The maximum allowable fine for this
19   offense is $250,000 or twice the gross monetary gain derived
20   from the offense or twice the gross monetary loss to persons
21   other than yourself, whichever of those is greater.  In
22   addition, I can order restitution to any person or entity
23   injured as a result of your criminal conduct.  I can also order
24   you to forfeit all property derived from the offense or used to
25   facilitate the offense.  And finally, I must also order a
```

K1D8EDWP

1    mandatory special assessment of $100.

2            Counsel, before I proceed, do any of you wish to

3    correct or amend any of the penalties that I have just

4    described?

5            MS. RAVENER:  No, your Honor.

6            MR. AGNIFILO:  Not the defense, no.

7            THE COURT:  Thank you.

8            Dr. Edwards, do you understand that these are the

9    maximum possible penalties for this offense?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Thank you.

12           So, Dr. Edwards, do you understand that as a result of

13   your guilty plea you may lose certain valuable civil rights, to

14   the extent that you have them or could otherwise obtain them

15   now, such as the right to vote, the right to hold public

16   office, the right to serve on a jury, and the right to possess

17   any kind of firearm?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Dr. Edwards, are you serving any other

20   sentence, either state or federal, or, to your knowledge, are

21   you being prosecuted in state court for any crime?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Thank you.

24           Dr. Edwards, do you understand that if your lawyers or

25   anyone else has attempted to predict what your sentence will

K1D8EDWP

1    be, that their prediction could be wrong?

2              (Defendant confers with counsel)

3              THE DEFENDANT:  Your Honor, my lawyers haven't made a

4    prediction.  I'm sorry.  I didn't understand the question.

5              THE COURT:  That's fine.  Thank you.

6              Do you understand that the sentence ultimately that

7    may be imposed may be different from any estimate that you may

8    have established for yourself?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Thank you.

11             That's good that no one has given you any such

12   assurance because no one, not your lawyers, not the

13   government's lawyers, really no one can give you any assurance

14   of what your sentence is going to be.  That's because I am

15   going to impose your sentence, and I am not going to do that

16   now.

17             Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Now, Dr. Edwards, before I impose your

20   sentence, I will review a presentence report that's prepared by

21   the probation department.  You and your counsel, and counsel

22   for the United States, will have the opportunity to challenge

23   the facts that are presented in that presentence report and

24   also the application of the advisory sentencing guidelines that

25   are recommended by the probation officer in that report.

K1D8EDWP

1          Now, I am obliged to do my own independent calculation

2     of the advisory sentencing guidelines that apply in your case.

3     After your initial advisory range has been determined, in some

4     cases I have the authority to depart upwards and downwards from

5     that range.  Ultimately, I will determine what a reasonable

6     sentence is for you, based on a number of sentencing factors

7     which you can find in the statute at 18, United States Code,

8     Section 3553(a).  That may result in the imposition of a

9     sentence that is either greater or lesser than the advisory

10    sentencing guidelines range.

11          Do you understand all of that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Thank you.

14          Have you and your attorney discussed how the advisory

15    sentencing guidelines might apply in your case?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Thank you.

18          Now, Dr. Edwards, even if your sentence is different

19    from what your lawyer or anyone else has told you it might be,

20    even if it's different from what you expect or from what is

21    contained in a written agreement that you may have entered into

22    with the United States, you will still be bound by your guilty

23    plea and will not be allowed to withdraw your plea of guilty.

24          Do you understand that?

25          THE DEFENDANT:  Yes, sir.

K1D8EDWP

1          THE COURT:  Thank you.

2          So, Dr. Edwards, we have just discussed a number of

3    consequences of your plea.  Do you understand all of those

4    possible consequences of your plea?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Now, I understand that there is a written

7    plea agreement entered into between Dr. Edwards and your

8    lawyers and the lawyers for the United States.

9          I have been handed the original letter plea agreement,

10   which is dated January 3, 2020, to your lawyers from Assistant

11   United States Attorneys Kimberly Ravener, Mr. Richenthal, and

12   Ms. Comey.

13         I am going to mark this as Court Exhibit 1, and then I

14   am going to hand it forward to the United States to retain in

15   its possession.  Before I do that, however, Dr. Edwards, I

16   would like to ask you first some questions about this

17   agreement, if I can.

18         So, first, did you sign the original of the plea

19   agreement on the last page?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Thank you.

22         Did you do that today in the presence of your lawyer?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Thank you.

25         Did you read the agreement before you signed it?

K1D8EDWP

1              (Defendant confers with counsel)

2              MR. AGNIFILO:  The reason that there is a pause is

3     because we had signed a previous one.  So to have all of the

4     original signatures on one document, we resigned it today.  So

5     she signed it initially maybe ten days ago and then we just

6     signed another one today.

7              THE COURT:  I appreciate that.

8              Dr. Edwards, did you read the agreement before you

9     signed it?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Did you discuss it with yours lawyers

12    before you signed it?

13             THE DEFENDANT:  In-depth.

14             THE COURT:  Did you fully understand the agreement

15    before you signed it?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Thank you.

18             So, Dr. Edwards, one of the features of your agreement

19    with the United States is that you have agreed upon the

20    advisory sentencing guidelines range that applies in this case.

21    Is that correct?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Thank you.

24             You should know that agreement is binding on you and

25    it's binding on the United States, but it's not binding on me.

K1D8EDWP

1    As I told you earlier, I have my own independent obligation to

2    determine what the appropriate guidelines range is in your

3    case.

4            Now, I am not saying that I will come up with any

5    range that's different from the one that you have agreed to

6    with the United States in this letter.  I don't know at this

7    point.  But what is important for you to understand is that if

8    I do determine a different range, I will not let you withdraw

9    your plea, even if the range that I determine is higher than

10   the one that you have agreed to with the United States.

11           Do you understand that?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Thank you.

14           So, Dr. Edwards, do you understand that under some

15   circumstances you or the United States may have the right to

16   appeal any judgment and sentence that I impose?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Thank you.

19           In your plea agreement, you have waived a number of

20   rights to appeal or otherwise challenge your conviction and

21   sentence in this case.  In particular, you have agreed not to

22   file a direct appeal or to bring a collateral challenge,

23   including, but not limited to, an application under Title 28,

24   United States Code, Sections 2255 or 2241, of any sentence

25   within or below the stipulated guidelines range of 0 to 6

K1D8EDWP

months' imprisonment.  You have also agreed not to appeal any

term of supervised release that is less than or equal to the

statutory maximum.  You have also agreed not to appeal any fine

that is less than or equal to $9500.

In addition, by entering into the plea and the plea

agreement, you have waived any right to withdraw your plea or

to attack your conviction, on direct appeal or collaterally, on

the grounds that the United States has failed to produce any

discovery material, Jencks Act material, exculpatory material

pursuant to *Brady v. Maryland*, other than information

establishing your factual innocence, or impeachment material

pursuant to *Giglio v. United States* that has not already been

produced as of the date of the agreement.

Furthermore, while I understand that you are a United

States citizen, in the plea agreement you have agreed not to

challenge your conviction or sentence on direct appeal or

collaterally, under Title 28, United States Code, Sections 2255

or 2241, on the basis of any actual or perceived adverse

immigration consequences, including removal or

denaturalization, resulting from your guilty plea and

conviction.

Dr. Edwards, do you understand the rights to appeal or

otherwise challenge your conviction and sentence that you have

waived in your plea agreement?

(Defendant confers with counsel)

K1D8EDWP

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Thank you.

3            Are you willing to waive those rights?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Thank you.

6            Dr. Edwards, does this written plea agreement

7    constitute your complete and total understanding of the entire

8    agreement between you and the government?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Has anything been left out?

11           THE DEFENDANT:  No, sir.

12           THE COURT:  Thank you.

13           Dr. Edwards, other than what is written in this

14   agreement, has anyone made any promise to you or offered you

15   any inducement to plead guilty or to sign the plea agreement?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Has anyone threatened you or forced you to

18   plead guilty or to sign the plea agreement?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Has anyone made a promise to you regarding

21   what your sentence will be?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Thank you.

24           So, Dr. Edwards, I told you earlier that there would

25   come a time in this proceeding when I would turn to you to ask

K1D8EDWP

1     you to tell me what it is that you did that makes you believe

2     that you are guilty of the offense to which you intend to plead

3     guilty.  This is that time.

4          Would you please tell me what it is that you did that

5     makes you believe that you are guilty of this offense.

6          MR. AGNIFILO:  Your Honor, we together, Dr. Edwards

7     and us, we put together a short prepared statement.  She is

8     going to read from that if that's agreeable to your Honor.

9          THE COURT:  That's fine.

10         Please proceed.

11         THE DEFENDANT:  Your Honor, from in or about October

12    2017 through October 2018, I knowingly and willfully agreed

13    with others to make unauthorized disclosures of a suspicious

14    activity report, known as a SAR, and the existence of a SAR, in

15    violation of the law.  I obtained access to the SAR by virtue

16    of my official position at Financial Crimes Enforcement

17    Network.  During this time period, I committed at least one act

18    as part of my agreement.  Specifically, I transmitted a file

19    containing or describing a SAR to an unauthorized recipient via

20    an encrypted application.

21         As part of my guilty plea, I waive any potential venue

22    challenges.  I do not object to this matter being heard and

23    resolved in the Southern District of New York.

24         I am sorry for what I have done, and I apologize to

25    you, your Honor, and the court.

K1D8EDWP

1      THE COURT:  Dr. Edwards, when you did those things,

2   did you know what you were doing was wrong and illegal?

3      MR. AGNIFILO:  Your Honor, this is probably the thing

4   we spent the most time on.  By law I believe she has to know

5   it's illegal.  The question -- I hope this answers your Honor's

6   question -- what we have been doing research on for several

7   months is, are there circumstances where one can believe there

8   is some sort of greater good done by doing something than by

9   not doing it?  At the end of the day, that's not a defense.

10      So the elements of the charge is that she had these

11   SAR reports, she got them in her capacity as a government

12   official, and she disclosed them to a party that she should not

13   have disclosed them to.  That breaks the law from our view and

14   our research.  So she believes that what she did was breaking

15   that law, your Honor, and so she is pleading guilty because we

16   on the defense side have come to the conclusion that she has no

17   defense to the charge because her motivation is not

18   dispositive.

19      THE COURT:  Thank you.

20      Dr. Edwards, when you did the things that you have

21   described, did you know what you were doing was illegal?

22      MR. AGNIFILO:  One second, Judge.

23      THE COURT:  Please take your time.

24      (Defendant confers with counsel)

25      THE DEFENDANT:  Your Honor, when I disclosed the SAR,

K1D8EDWP

1   under the circumstance in which I disclosed the SAR, I did not

2   know at the time of the regulation.  However, working in the

3   capacity of which I did, in my official duties, I did know the

4   BSA law.  I also knew the whistleblower act and the legislation

5   within the whistleblower act.  I was passing the SARs within

6   the BSA, in my official capacity, within the whistleblower

7   legislation through Congress.

8          MR. AGNIFILO:  Judge, I am sorry, I don't want to

9   complicate the record.

10          The problem, Judge, is I don't think any of this is a

11   defense to the charge.  My belief of the state of the law, and

12   we have done a lot of research on it and we have spent a great

13   deal of time speaking to the government about it, is this is

14   one of those instances where -- pardon the axiom -- ignorance

15   of the law is no defense or excuse.  So I don't believe she has

16   to know specifically what the law is.  What she does have to

17   know, which is what she does know, and I think she has

18   admitted, is that she got these SARs in her capacity as a

19   government employee.  She disclosed them in an unauthorized

20   fashion, meaning without the authority of the agency for which

21   she worked.

22          My understanding of the state of the law, if we

23   concentrate on the word "authorized," she cannot by law

24   authorize herself, the authorization has to come from outside

25   of herself, and we didn't have that.  So that is why we believe

K1D8EDWP

1   we did not have and do not have a valid defense to the charge,

2   and why, at the end of the day, the fact that she disclosed the

3   SAR, while she was a government employee, having received the

4   SAR in her official capacity, knowing that the SAR is a

5   confidential document, that by the act of disclosing the SAR,

6   she would be violating this particular statute.

7           So that is what we believe the state of the law is,

8   and we believe, despite our extensive research, and obviously

9   we checked at great length, we don't have a defense from the

10  fact that she might have had some belief that somehow she could

11  do this.

12          THE COURT:  Thank you.  The question isn't whether or

13  not you go to trial and lose; the question is whether or not I

14  have an adequate factual predicate for it to accept a plea.

15          Let me give you the opportunity to confer.

16          MS. RAVENER:  Your Honor, if we may have a moment to

17  confer with defense counsel.

18          THE COURT:  Please do.

19          (Counsel confer)

20          THE DEFENDANT:  Your Honor, I am probably not supposed

21  to --

22          THE COURT:  Give your counsel a moment to confer.

23  Then I am happy to give you the opportunity to speak to the

24  Court with the benefit of their counsel.

25          (Counsel confer)

K1D8EDWP

1         (Defendant confers with counsel)

2         MR. AGNIFILO:  Your Honor, I think we are ready.

3         THE COURT:  Thank you.

4         THE DEFENDANT:  Your Honor, I agreed to disclose a SAR

5    knowing I was not allowed under the law to disclose it.

6         THE COURT:  Thank you.

7         THE DEFENDANT:  You're welcome.

8         THE COURT:  So counsel for defendant, do you know of

9    any valid defense that would prevail at trial or do you know of

10   any reason why your client should not be permitted to plead

11   guilty?

12        MR. AGNIFILO:  Thank you, your Honor.  As I have

13   referred, we have given this matter a great deal of thought, a

14   great deal of research.  I know of no valid defense that would

15   prevail at this trial, and I believe my client should plead

16   guilty.

17        THE COURT:  Thank you, counsel.  And thank you for

18   taking the time to do that careful work.

19        Counsel for the United States, are there any

20   additional questions that you would like for me to ask the

21   defendant?

22        MS. RAVENER:  No, your Honor.

23        THE COURT:  Thank you.

24        Can you please summarize briefly what the government's

25   evidence would be against the defendant if she were to proceed

K1D8EDWP

1    to trial.

2                MS. RAVENER:  Certainly, your Honor.

3                At a trial, the government's evidence would include,

4    among other things, the following:

5                Testimony from Treasury Department officials regarding

6    the defendant's employment at FinCEN and the training she

7    received regarding, among other things, the Bank Secrecy Act

8    and its requirements to keep SARs confidential;

9                Numerous communications recovered from the defendant's

10   personal cell phone, between the defendant and a particular

11   reporter who worked for a media organization based in

12   Manhattan, during which the defendant provided SARs, and the

13   contents of SARs, along with other confidential or sensitive

14   government information;

15               Communications between the defendant and other FinCEN

16   employees regarding disclosure of information to the same

17   reporter;

18               Records recovered from the defendant's home and a

19   search of her person, including her electronic devices.  Those

20   records included, among other things, an internal FinCEN e-mail

21   exchange which she shared with the reporter;

22               Articles published online by the reporter disclosing

23   the substance of the SARs disclosed by the defendant;

24               FinCEN government records confirming that the

25   defendant had access to and had saved to a flash drive

K1D8EDWP

1    particular SARs disclosed in that reporter's articles;

2            The flash drive itself and data recovered from it

3    pursuant to a search of Ms. Edwards;

4            Testimony from Treasury Department officials

5    confirming that there was no legitimate official purpose or

6    authorization for the defendant to save those SARs in that

7    manner or to provide them to the reporter;

8            The defendant's statements to law enforcement on or

9    about October 16, 2018, in which she initially denied any

10   contact with the news media, but subsequently confessed that

11   she had provided SARs to the reporter via an encrypted

12   application;

13           Internet search history records of the defendant's

14   personal e-mail account reflecting that the defendant searched

15   for and reviewed certain of the reporter's articles revealing

16   the substance of SARs provided by the defendant; and

17           Messages recovered from the defendant's personal cell

18   phone confirming that after viewing these articles, the

19   defendant continued to provide the reporter with SARs, and the

20   content of SARs, via an encrypted application.

21           THE COURT:  Thank you.

22           Counsel, do both sets of counsel agree that there is a

23   sufficient factual predicate for a guilty plea?

24           MS. RAVENER:  We do, your Honor.

25           MR. AGNIFILO:  We do as well, your Honor.

K1D8EDWP

1          THE COURT:  Does either set of counsel know of any

2     reason that I should not accept the defendant's plea of guilty?

3          MS. RAVENER:  No, your Honor.

4          MR. AGNIFILO:  No, your Honor.

5          THE COURT:  Thank you.

6          Dr. Edwards, can I ask you to please stand.

7          Dr. Edwards, Count One of the information charges that

8     from at least in or about October 2017 up to and including in

9     or about October 2018, in the Southern District of New York and

10    elsewhere, you conspired with others to make unauthorized

11    disclosures of SARs, and the existence of SARs, in violation of

12    18, United States Code, Section 371.

13          How do you plead to this count?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  Thank you.

16          It is the finding of the Court in this case that Dr.

17    Edwards is fully competent and capable of entering an informed

18    plea, that Dr. Edwards is aware of the nature of the charge and

19    the consequences of the plea, and that the plea of guilty is a

20    knowing and voluntary plea supported by an independent basis in

21    fact containing each of the essential elements of the offense.

22    The plea is therefore accepted and the defendant is now

23    adjudged guilty of that offense.

24          Thank you, Dr. Edwards.  You can be seated.

25          Dr. Edwards, the probation department will want to

K1D8EDWP

1    interview you in connection with the presentence report that it

2    will be preparing, as I have described it earlier.

3              Counsel for defendant, do you wish to be present for

4    any interview in connection with that report?

5              MR. AGNIFILO:  Yes, please, your Honor.

6              THE COURT:  I direct that no interview take place

7    without counsel present.

8              Counsel for the United States, please provide the

9    probation office with the government's statement within the

10   next seven days.

11             Counsel for defendant, please arrange for Dr. Edwards

12   to be interviewed by the probation office within the next 14

13   days.

14             MR. AGNIFILO:  I will do so.  Thank you.

15             THE COURT:  So, Dr. Edwards, if you choose to speak

16   with the probation department, I would ask that anything you

17   say to the probation department be truthful and accurate.  The

18   probation department will be preparing a report which is very

19   important for me in deciding what the appropriate sentence is

20   for me to impose.  So I urge you to take advantage of your

21   right to review and comment on the report.  Please read the

22   report.  If you have any concerns regarding it, please point

23   them out to your lawyer so that your counsel can point them out

24   to the probation officer who is preparing the report, or to my

25   attention at sentencing, as appropriate.

K1D8EDWP

1             So I am going to set a sentencing date now.

2             Mr. Daniels, would you please propose a date.

3             THE DEPUTY CLERK:  Tuesday, May 12, 2020, at 4 p.m. in

4      the afternoon.

5             THE COURT:  Thank you.

6             Counsel, does that date and time work for each of you

7      and Dr. Edwards?

8             MR. AGNIFILO:  Can I just check one thing, your Honor?

9             THE COURT:  Please, take your time.

10            (Defendant confers with counsel)

11            MR. AGNIFILO:  Your Honor, is it OK if we ask for an

12     early June date?  Dr. Edwards has to undergo a surgical

13     procedure in the next couple of months and it might be a

14     couple-month recovery period.  So I wouldn't want to move the

15     date at the last minute.

16            THE COURT:  I am happy to accommodate that.

17            Mr. Daniels, please propose an alternative date.

18            THE DEPUTY CLERK:  Wednesday, June 3rd.

19            THE COURT:  Counsel, is that sufficient time for you?

20            MR. AGNIFILO:  It is.  I thank the Court.

21            THE COURT:  That's fine.

22            What time?

23            THE DEPUTY CLERK:  2 p.m.

24            MR. RICHENTHAL:  Your Honor, the only issue with June

25     3rd, and I am obviously only one member of the government team,

K1D8EDWP

1   is I have a trial commencing before Judge Kaplan on May 18th.

2   It may or may not go, but I anticipate if it does, that I may

3   well still be on trial the first week of June.  So if we are

4   going to move it to June, I would just request that it be one

5   week later than that.

6          THE COURT:  That's fine.  I am happy to accommodate

7   that to the extent the schedule permits.

8          Mr. Daniels, would you please propose an alternative

9   date.

10          THE DEPUTY CLERK:  Tuesday, June 9th, at 4 p.m.

11          MS. RAVENER:  Thank you, your Honor.  That's fine for

12   the government.

13          THE COURT:  Counsel for the defendant.

14          MR. AGNIFILO:  Yes.  Thank you, your Honor.

15          THE COURT:  So sentencing will take place at that date

16   and time.

17          Counsel, let me refer you to my individual rules in

18   criminal cases.  Those provide rules regarding sentencing

19   submissions.  The principal rule that I want to highlight now

20   are the deadlines for sentencing submissions.  In accordance

21   with those rules, the defendant's sentencing submissions are

22   due no later than two weeks prior to sentencing; the

23   government's materials are due no later than one week prior to

24   sentencing.

25          So Dr. Edwards is out on pretrial release now.

K1D8EDWP

1  Counsel, what is your respective position regarding the

2  conditions of her release pending sentencing?

3           MS. RAVENER:  Your Honor, we are comfortable with the

4  conditions remaining as is for now.

5           THE COURT:  Thank you.

6           Counsel for defendant.

7           MR. AGNIFILO:  We too are comfortable.

8           THE COURT:  Can I ask for a brief proffer regarding

9  risk of flight and danger to the community and others from

10 counsel for defendant.

11          MR. AGNIFILO:  We believe there is no risk of flight.

12 This case has been proceeding for quite some time.  I can

13 represent as an officer of the court we have regular contact

14 with our client.  She is very responsive.  I don't believe

15 there have been any issues with pretrial service violations.

16 She lives in Virginia with her family.  She has an extended

17 family, many of whom have made the trip here to New York.  She

18 has very strong community roots.  I don't believe there is any

19 meaningful risk of flight, nor is there any risk of danger to

20 the community, Judge.  So I think we are very safe in keeping

21 the same conditions.

22          THE COURT:  That's fine.  On the basis of the

23 defendant's counsel's proffer, I conclude the defendant is not

24 likely to flee or pose a danger to the safety of any other

25 person or the community.  As a result, the existing conditions

K1D8EDWP

1    of Dr. Edwards's pretrial release will remain in effect.

2              Dr. Edwards, let me just ask you two brief questions.

3              First, do you understand that all of the conditions

4    upon which you have been released up until now remain in

5    effect?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Thank you.

8              Do you understand that a violation of any of those

9    conditions could have very serious consequences for you at the

10   time of sentencing?

11             (Defendant confers with counsel)

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Thank you.

14             So, Dr. Edwards, you must be in this courtroom for

15   sentencing at the date and time that I have just set, unless I

16   modify it by express written order.  If you are not, you will

17   be guilty of a separate crime, that is bail jumping, and will

18   be subject to a fine and/or a prison term in addition to

19   whatever sentence you may receive for the crime to which you

20   have just pleaded guilty.

21             Do you understand that?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Thank you very much.

24             Counsel, anything else that we need to take up now

25   before we adjourn?

K1D8EDWP

1          MS. RAVENER:  Nothing from the government.

2          THE COURT:  Thank you.

3          Counsel.

4          MR. AGNIFILO:  Thank you.  Nothing from the defense.

5          THE COURT:  Thank you very much.

6          This proceeding is adjourned.

7          (Adjourned)