**STEPHANIE M. CARVLIN, ESQ.**
140 Broadway, Suite 4610
New York, New York 10005

STEPHANIE M. CARVLIN,
ATTORNEY AT LAW

TELEPHONE: 212-748-1636
FAX: 212-858-7750
E-MAIL: CARVLIN@HOTMAIL.COM

July 30, 2020

The Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Sours Edwards*,
19-cr-64 (GHW)

Dear Judge Woods:

I write to respond to the Court's order of July 22, 2020, directing that I address the INNER CITY PRESS'S application that the Court file publicly materials Dr. Sours Edwards submitted to the Court *ex parte* on or about June 21, 2020. The documents do not meet the definition of judicial documents, and, therefore, they should not be filed on the public docket. Even if the documents did constitute judicial documents, they should not be publicly filed.

A public right of access to criminal trials and ancillary proceedings is implicit in the First Amendment; see *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-06 (1982); and also arises from the common law. See *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*) (common law right of public access is said to predate the Constitution); see also, *United States v. Alcantara*, 396 F.3d 189, 191-92 (2d Cir. 2005) (qualified right to public access to sentencing); *In re Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984) (suppression hearing); *Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 510-13 (1984) *(Press Enterprise I) (voir dire)*; *ABC, Inc. v. Stewart*, 360 F.3d 90, 105-06 (2d Cir. 2004) (same); *Press–Enterprise Co. v. Superior Court of Calif.*, 478 U.S. 1, 10 (1986) (*Press-Enterprise II*) (preliminary hearing); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) (plea hearings and plea agreement).

The right of access extends to some, but not all, written materials related to judicial proceedings. Only "judicial documents" – those that implicate the right of access – need to be made available to the public. *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). The "mere filing of a paper or document with the court is insufficient to render that

paper a judicial document subject to the right of public access." *Amodeo*, 44 F.3d at 145. Rather, before any right of access attaches "a court must first conclude that the documents at issue are indeed judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit has defined judicial documents as those materials that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 126; *accord United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 133 (2d Cir. 2017)

The materials Dr. Sours Edwards submitted *ex parte* do not meet this test. In her submission, through counsel, of July 16, 2020, Dr. Edwards asked that the Court not consider for any future purposes the documents she had submitted *pro se*. Indeed, she requested permission to withdraw the material. July 16, 2020, letter to the Court, docket entry 57. The Court stated that it would not consider the submissions in making any further determinations in the case. In other words, the material will not be relevant to the performance of a judicial function or useful in the judicial process.

It is not clear whether the Court relied on the *ex parte* material for the limited purpose of granting Dr. Sours Edwards's request for a change of counsel. Both prior counsel for Dr. Sours Edwards and present counsel made representations during the July 21, 2020, conference, which was open to the public, that the attorney-client relationship had irrevocably broken down. Those assertions, if credited by the Court, would have provided a sufficient basis for the Court's decision. To the extent that the Court gave some consideration to Dr. Sours Edwards's description in her *pro se* submission of her interactions with her then counsel, disclosure still is not warranted.

Even if a document (or portion of a document) is relevant to the performance of the judicial function and useful in the judicial process, and as a result a presumption of public access applies, disclosure is not automatic. The weight to be given the presumption under the common-law right of access "must be governed by the role of the material at issue in the exercise of Article III judicial powers and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (*Amodeo II*). The Court must then balance the degree to which disclosure advances those purposes against "competing considerations." *Id.* at 1050.

The analysis under the First Amendment differs to some degree. The Second Circuit has "articulated two different approaches for determining whether 'the public and the press should receive First Amendment protection in their attempt to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (*quoting Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The first method – the "experience and logic" approach – requires the Court to determine whether the documents have historically been open to the press and public and whether public access "plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The second approach "considers the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (*quoting Hartford Courant Co.*, 380 F.3d at 93). Again, the conclusion that some First-Amendment right of public access to a document exists "does

2

not end the inquiry." *Lugosch*, 435 F.3d at 120. Documents need not be disclosed if the Court makes specific findings on the record that not disclosing the material is necessary to preserve a higher value and that the extent of the redaction is narrowly tailored to serve that interest. *Id*.

Under these balancing tests, public disclosure is not warranted. Only the very limited portions of Dr. Sours Edwards's submissions that were aimed at seeking new counsel could even arguably be considered relevant to a judicial function – the Court's decision to permit. her to change counsel. Those passages, which describe conversations between attorney and client, advice provided by counsel and Dr. Sours Edwards's view of her relationship with her then-counsel, would be protected by the attorney-client privilege. The interest in non-disclosure of material covered by the attorney-client privilege is extraordinarily strong. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice."); *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (attorney-client privilege survives death of the client); *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (acknowledging the importance of the attorney-client privilege as a means of protecting the relationship and fostering robust discussion); *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016) (preservation of the confidences between lawyer and client "touch[es] upon vital concerns of the legal profession and the public's interest in the scrupulous administration of justice.") (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564 (2d Cir. 1973).

In contrast, the benefit to the public or the press in their roles as watchdogs of the judicial system that would flow from learning the details of the Dr. Sours Edwards's view of her relationship with her counsel is difficult to even articulate. *Cf. Amodeo II*, 71 F.3d at 1040 (strong presumption of access attaches to documents used to determine litigants' substantive legal rights).

To summarize, the vast majority of Dr. Sours Edwards's *ex parte* submission, if not all, does not constitute a judicial document. She has explicitly requested that the Court not consider the material further. As a result, the contents will not be relevant to a judicial function. This Court may make an explicit finding that it did not rely on the material in ruling on Dr. Sours Edwards's request for new counsel. If that is the case, no portion of the submissions constitutes a judicial record. If the Court concludes that it did rely the discussion of the attorney-client relationship in Dr. Sours Edwards's submission to some degree in permitting her to change counsel, that portion of the submission should not be publicly disclosed. "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents maybe kept under seal if countervailing factors in the common-law framework or the higher valves in the First Amendment framework so demand." *Lugosch*, 435 F.3d at 124 (internal quotation marks omitted). Strong countervailing factors exists in this case: the need to preserve Dr. Sours Edwards's attorney-client privilege.

The cases cited by INNER CITY PRESS in it application do not support its position here. In *United States v. Griffin*, 20-cr-15 (PKC), the defendant had filed an *ex parte* application for a *subpoena duces tecum*. INNER CITY PRESS sought access to the application and supporting material. Both the defense and the government consented to the disclosure. 20-cr-15 (PKC), docket entries 38 and 39. In *United States v. Randall*, 19-cr-131 (PAE), INNER CITY PRESS objected to the government's motion to close the court during testimony by an undercover officer with the Suffolk County Police Department. The District Court granted the government's motion in all respect. 19-cr-131 (PAE), docket entries 344, 345.

The Court should deny INNER CITY PRESS'S application.

Respectfully submitted,

_____/s/_____
Stephanie Carvlin

cc: AUSA Daniel C. Richenthal
AUSA Kimberly J. Ravener (via ECF)