UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/20/20
```

-------------------------------------------------------------X
                                         :

UNITED STATES OF AMERICA,           :

                                          :

                -v-                  :              1:19-cr-00064-GHW

                                          :

NATALIE MAYFLOWER SOURS        :          <u>MEMORANDUM OPINION AND</u>
EDWARDS,                           :                  <u>ORDER</u>

                                          :

                            Defendant.   :
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

In the midst of the coronavirus pandemic and a profound breakdown in her ability to communicate with her counsel, the defendant, Dr. Sours Edwards, submitted materials to the Court *ex parte* and *pro se*. The submissions provoked a series of conferences that ultimately resulted in the replacement of Dr. Sours Edwards' counsel. Her new counsel requested that Dr. Sours Edwards be permitted to withdraw the submissions and that the Court not consider them for any purpose. The Court agreed. Because the Court has agreed not to consider the content of the submissions for any purpose, they are not relevant to the exercise of a judicial function, and are not judicial documents.

## I.     Background

On January 13, 2020, Dr. Sours Edwards pleaded guilty to a single count of conspiracy to make unauthorized disclosures of suspicious activity reports. Transcript of January 13, 2020 Conference, Dkt. No. 37. Marc Agnifilo and Jacob Kaplan of Brafman & Associates, P.C. represented Dr. Sours Edwards at the time of her plea, as they had since her indictment in the case. At the request of counsel for the defendant, the Court scheduled her sentencing to take place on June 9, 2020. *Id.* at 34:10–16. Because Dr. Sours Edwards had been diagnosed with pneumonia, her counsel requested an extension of the deadline for completion of the presentence report, Dkt. No.

38.  The Court granted that request on March 3, 2020, and adjourned sentencing to July 8, 2020.

Dkt. No. 39.

It is worthy of note that outside of this case, big things were happening in the world in mid-March—the COVID-19 pandemic struck hard, resulting in a national declaration of emergency by the President and the issuance of a variety of orders limiting the operation of non-essential businesses in New York and elsewhere.  *See, e.g.,* N.Y. Exec. Order No. 202 (Mar. 7, 2020), https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york; Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation No. 9994, 85 Fed. Reg. 15,337, (Mar. 13, 2020), https://www.govinfo.gov/content/pkg/FR-2020-03-18/pdf/2020-05794.pdf.

In mid-May the Court learned that the defendant had not timely provided her objections to the presentence report to the probation office.  As a result, on May 18, 2020 the Court issued an order directing that counsel for the defendant explain the reasons for the delay and to advise the Court whether the delay would have an impact on the anticipated sentencing deadline.  May 18, 2020 Order, Dkt. No. 42.

In response, counsel for Dr. Sours Edwards explained that the delay resulted in part from Dr. Sours Edwards' health issues, and wrote the Court that counsel had "made its best efforts to address Dr. Edwards' concerns with the draft PSR," but that because of Dr. Sours Edwards' health issues, they had not been able to do so.  May 21, 2020 Letter, Dkt. No. 43, at 2.  Counsel for Dr. Sours Edwards requested another extension of the sentencing date in order to permit them to continue their discussions with the government regarding the defendant's objections to the presentence report with the goal of resolving the issues without the need for a *Fatico* hearing.  *Id.* The Court granted that request and extended the sentencing date to August 21, 2020.  May 22, 2020 Order, Dkt. No. 44.

It was against this backdrop—the unsettling pall of COVID-19, Dr. Sours Edwards' illness, resulting communication gaps between Dr. Sours Edwards and her counsel, and repeated delays in sentencing to work through the defendant's objections to the presentence report—that the submissions at issue here arrived on the scene.

On June 22, 2020, the Court received an *ex parte* submission from Dr. Sours Edwards by email. The Court issued an order the same day. June 22, 2020 Order, Dkt. No. 48. In the order, the Court directed Dr. Sours Edwards to share a copy of the submission with her counsel. The Court observed that elements of Dr. Sours Edwards' submission included attorney-client communications, and so directed defense counsel to identify any portions of the submission that should not be provided to counsel for the United States. On June 24, 2020, the Court scheduled a conference to discuss the submissions. June 24, 2020 Order, Dkt. No. 49.

On June 25, counsel for Dr. Sours Edwards wrote to request that the Court appoint independent counsel to represent Dr. Sours Edwards. June 25, 2020 Letter, Dkt. No. 51. They wrote that "[i]n her submission, Dr. Sours Edwards makes several statements regarding her relationship with counsel. . . . . After conferring, both counsel and the government agree that, in an abundance of caution, this Court should consider appointing independent counsel for Dr. Sours Edwards prior to the conference for the limited purpose of conferring with Dr. Sours Edwards about her submission and any issues she has regarding her relationship with current counsel." *Id.*

The June 29, 2020 conference was attended by counsel for Dr. Sours Edwards, counsel for the United States, as well as Stephanie Carvlin, a member of the Court's Criminal Justice Act panel who participated in the conference at the invitation of the Court. Early in the conference, the Court talked about a number of issues to help Dr. Sours Edwards understand the legal context in which her submissions to the Court would be viewed. The Court reminded her of her attorney-client privilege and her right to remain silent. The Court also highlighted two salient doctrines with which

3

a lay person like Dr. Sours Edwards might not have been expected to be familiar at the time that she sent her *pro se*, *ex parte* submissions to the Court:  the limitation on *ex parte* materials considered by the Court; and the presumption of public access to judicial records.

> THE COURT:  Also, as a general matter, I don't tend to act on information that's not shared with the parties in a case.  Submissions that are sent to me we refer to, using lawyer Latin, as *ex parte* submissions.  That means on behalf of a party but not provided to the other parties.  The general reason for that is that I need to have the benefit of the parties', that is, the lawyers', and their clients' perspectives in order to evaluate arguments and the information put before me.  There's also an important First Amendment-based doctrine which is called the presumption of public access to judicial documents.  It's an involved doctrine that I won't delve into in all of its depth now, but I would just say the default rule is that information that's shared with the Court in order for me to make decisions is to be made a matter of public record.  That's the case unless I can make particularized findings to support overcoming the presumption of public access to those documents.

June 29, 2020 Hearing Transcript, Dkt. No. 72 ("June 29, 2020 Tr."), at 10:9–25.

During the June 29, 2020 hearing, counsel for the defendant described the steps that they had taken to redact portions of Dr. Sours Edwards' *ex parte* submissions.  By the date of the hearing, they had already provided their redacted version of the submissions to counsel for the United States. The Court requested that the parties work together to discuss any concerns regarding the defendant's redactions to those materials, and asked that they submit any unresolved disputes regarding the redactions to the Court for future resolution.  June 29, 2020 Tr. at 16:14–17:2. Counsel for the defendant then provided some context for the submissions, describing differences of opinion regarding defense strategy, and concluding that

> there are certainly on the defense side sort of different ways of what we think could be the best way of defending the case.  So my proposal is going to be just to get Mr. Kaplan and I out of the mix for, hopefully, a moment in time, have Dr. Sours Edwards speak to independent counsel, and she'll come away feeling one way or the other.

*Id.* at 23:4–11.  The Court invited Ms. Carvlin to work with Dr. Sours Edwards as independent counsel to confer about the issues discussed, and laid out a framework for those conversations before adjourning the conference.  *Id.* at 24:9–29:20.

On July 9, 2020, the Court held another conference to confirm Dr. Sours Edwards' eligibility for counsel under the Criminal Justice Act. After concluding that she did, the Court appointed Ms. Carvlin to represent her as an independent voice to help her determine how best to proceed with her case. The Court declined to take up a dispute that had been raised by the United States regarding the defendant's proposed redactions to Dr. Sours Edwards' *ex parte* submissions. July 9, 2020 Transcript, Dkt. No. 74, at 9:5–9 ("THE COURT: I've received a letter from the United States with respect to the redactions proposed by counsel for Dr. Sours Edwards to the submissions that she made to the Court. I understand that Dr. Sours Edwards wishes to confer with independent counsel before the parties discuss a potential resolution of those issues. I'm inclined to give her the opportunity to do that.").

Dr. Sours Edwards and Ms. Carvlin did confer about her *ex parte* submissions: just one week later, on July 16, 2020, Ms. Carvlin submitted a letter to the Court requesting that the Court permit Dr. Sours Edwards to withdraw the submissions, and for them to be given no further consideration by the Court.

> I have read the documents thoroughly and discussed the contents with Dr. Sours Edwards. She has authorized me to seek permission from the Court to withdraw the submissions. To the extent the Court has read the documents, I ask that their contents not be considered further by the Court. I believe this obviates the need to address any redaction issues raised by the material. I have consulted with the Assistant United States Attorneys who are representing the government in this case as well as with counsel for Dr. Sours Edwards, Jacob Kaplan, and the government has no objection to this request.

July 16, 2020 Letter, Dkt. No. 57. The letter also noted that Dr. Sours Edwards wished to change counsel.

The Court held a final conference regarding Dr. Sours Edwards' *pro se*, ex *parte* submissions on July 21, 2020. The Court first discussed the request for a change in counsel. As part of that discussion, counsel for Dr. Sours Edwards described the deterioration in the relationship between her and her counsel at the time of her *ex parte* submissions.

> MS. CARVLIN:  Well, your Honor, I think the basis for the request is that the attorney-client relationship has irrevocably broken down.  I think Dr. Sours Edwards' submission to the Court asserting violations of her Fifth and Sixth Amendment rights and seeking the Court's intervention is evidence of that.  Obviously, I don't want you to consider that, the other part of the application to consider the substance of those submissions, but the fact of those submissions is indication of that relationship, the situation or the state of that relationship.

Transcript of July 21, 2020 Conference ("July 21, 2020 Tr."), Dkt. No. 78, at 7:7–16.

Outgoing counsel confirmed the breakdown in their relationship with Dr. Sours Edwards. July 21, 2020 Tr. at 9:7–13 ("I think there became a breakdown in communications, and it became actually problematic enough that I thought that it could start to interfere with our ability to represent her zealously and in the way that we wanted to.  I'm, frankly, delighted that—if she and Ms. Carvlin have found common ground and are able to communicate . . . .").  On that record, the Court permitted Dr. Sours Edwards' former counsel to withdraw as counsel and appointed Ms. Carvlin to represent her in their stead.  *Id.* at 10:25–11:10.

The Court then turned to "the second of the issues that were raised in the letter that provoked this conference.  That's the request by defendant to withdraw the *ex parte* communications that were submitted to the Court."  *Id.* at 15:13–16.  Dr. Sours Edwards' counsel explained the rationale for the defendant's request that the documents be withdrawn:

> MS. CARVLIN:  As I said, alluded to before, the intention of submitting those documents was to get the Court's intervention.  Dr. Sours Edwards had questions about whether her rights had been violated, questions about her relationship with counsel, and felt that she needed some assistance in communicating that and getting some help with that.  So those submissions have served their purposes.  The submissions were never filed.  As you noted in the previous conference, Dr. Sours Edwards was represented by counsel, has always been represented by counsel, and any submission by court rules has to come through counsel.  So I would argue, first of all, that those documents were never submitted, they were never filed, they were never part of the public record.  I understand that there's a presumption that anything that is filed with the court will be open to the public.  Obviously, there are exceptions even there in terms of personal identifying information or national security or cooperating witness.  So even that is not absolute.  But in this case, there was nothing that is part of the public record.  So all I'm asking really is for the Court to not consider those documents in any respect going forward and to not have them become part of the court record.

6

*Id.* at 15:18–16:14.  The United States had no objection to the withdrawal of the materials "on the condition that [the Court] not consider them further with respect to sentencing."  *Id.* at 16:20–21.

The Court granted the defendant's request not to consider her withdrawn *ex parte* submissions for any purpose in the case.

> THE COURT:  I will not consider the information presented by Dr. Sours Edwards in any way for purposes of sentencing or otherwise with respect to the case.  As counsel for defendant, I think, aptly described it, the principal thing that those submissions did was trigger the Court's intervention with respect to the issues that have led to this change of counsel.

*Id.* at 17:15–21.

The Court also granted the defendant's request not to file the submissions on the docket of the case, reasoning in part as follows:

> THE COURT:  First, I think there's, at the very least, a substantial question regarding whether or not these are at all judicial documents.  That is because the Court has been presented with them, but I've agreed not to consider them for any purpose.  Therefore, these are not contributing to any decision that the Court expects to issue in this case.  They were a prompt to the series of conversations, but the information contained in them was not considered by me in connection with any ruling in this case, and I've agreed not to consider them for purposes of sentencing.
>
> Because of that, the information has very little weight.  To the extent that there is any interest of the public in connection with these documents, I think it is very, very small because it hasn't contributed at all to a judicial determination by the Court.  So as I look at the factors that I'm required to consider under *Lugosch* and the Court's other precedents, I believe that these are most likely not judicial documents, and to the extent that they are, the weight that the presumption has is not very high because it includes, among other things, privileged information and the interest is very small because they have not contributed to and will not contribute to a judicial decision.  So at this point I expect to file those documents someplace and not to look at them again.

*Id.* at 18:3–25.

Later that day, Matthew Lee of Inner City Press requested access to the documents, arguing that "the public and the press have a presumptive First Amendment and common law right of

access to criminal proceedings and records."[1]  July 21, 2020 Letter, Dkt. No. 60, at 1.  The letter respectfully disagreed with the Court's determination that "documents that trigger a Federal criminal case conference are not judicial documents."  *Id.* at 2.  The letter also argued that the public interest in the documents was not small.  *Id.*  On July 30, 2020, Dr. Sours Edwards filed her opposition to the request.  July 30, 2020 Letter, Dkt. No. 65.  Mr. Lee submitted replies on August 4, 2020 and August 5, 2020.  August 4, 2020 and August 5, 2020 Emails, Dkt. Nos. 66 and 67.

## II.    Legal Standard

"The common law right of public access to judicial documents is firmly rooted in our nation's history."  *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006).  However, "only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds."  *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017).  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995).

"In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'"  *Lugosch*, 435 F.3d at 119 (quoting *Amodeo I*, 44 F.3d at 145)).

> [A] court "perform[s] the judicial function" not only when it rules on motions currently before it, but also when properly exercising its inherent "supervisory powers."  A document is thus "relevant to the performance of the judicial function" if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision.

---

[1] "Representatives of the press must be given an opportunity to be heard on the question of their exclusion from a court proceeding, and we have recognized a similar right of news media to intervene in this Court to seek unsealing of documents filed in a court proceeding."  *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (internal citations, quotation marks, and alterations omitted).

*Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis and internal citations omitted).

   "In determining whether a document is a judicial record, we evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139–40 (2d Cir. 2016) (quoting *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013)) (alterations in original).

   ### III.   Analysis

   Dr. Sours Edwards' *pro se*, *ex parte* submissions to the Court are not judicial documents.  At the outset, the mere fact that they were submitted to the Court is not sufficient to make them judicial documents.  *See Amodeo I*, 44 F.3d at 145 (2d Cir. 1995); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (rejecting argument that a deposition transcript was a judicial document due to the fact that "the Court reviewed it in order to decide whether or not to enter a protective order" because so holding "would transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary"); *see also Giuffre v. Maxwell*, No. 15-cv-7433 (LAP), 2020 WL 133570, at *4 (S.D.N.Y. Jan. 13, 2020), *reconsideration denied*, No. 15-cv-7433 (LAP), 2020 WL 917057 (S.D.N.Y. Feb. 26, 2020) (rejecting the notion that any document filed with a court that requests relief and comes to a judge's attention, "whether decided, undecided, justiciable, or nonjusticiable," is a judicial document because "then practically every paper filed with the Court would be judicial in nature," which would "fl[y] in the face of the Court of Appeals' directive that 'mere filing of a paper or document with the court is insufficient to render that paper a judicial document.'") (quoting *Amodeo I*, 44 F.3d at 145).[2]

---

[2] There is a substantial question whether the Court would consider the *pro se* submission by the defendant in this context in any event.  Dr. Sours Edwards was represented by counsel at the time of her submissions.  She is not entitled to so-called "hybrid" representation, in which the Court considers both documents submitted on her behalf by counsel, as

These *pro se, ex parte* submissions are not relevant to the performance of the judicial function. The Court has agreed with the defendant's request that the Court not consider the submissions in connection with any aspect of this case.  The Court made no decision with respect to the content of the submissions—it did not even rule on the parties' disputes regarding potential redactions to the submissions.

As described on the record, the submissions prompted a series of conferences that surfaced the breakdown in communications between Dr. Sours Edwards and her counsel, and ultimately led to the substitution of counsel.  But the Court did not need to rely on the content of the documents in order to put the process in place that resulted in a change of counsel, other than to identify issues related to potential privilege or classification for the parties to resolve.  The mere existence of the *ex parte, pro se* submissions from Dr. Sours Edwards was sufficient to trigger the need to put a process in place to deal with them.

And the Court did not rely on the content of the submissions as the basis for its determination that a change of counsel was warranted—the basis for that determination was set forth on the record by counsel for Dr. Sours Edwards, as outlined above.  July 21, 2020 Tr. at 11:2-6 ("THE COURT:  *Based on the information that I've heard from counsel*, I believe that there's an adequate justification for me to permit her current counsel's withdrawal as her counsel in this case.") (emphasis added).

---

well as documents submitted by her *pro se.  See, e.g.*, *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016) ("If counsel declines to make the motion, it does not follow that the defendant has a right to make a motion on his own behalf, or to demand that the court appoint substitute counsel.  A defendant has a right either to counsel or to proceed pro se, but has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into pro se mode for selected presentations.") (internal citations omitted).  The Court has not granted Dr. Sours Edwards the right to proceed using "hybrid" representation, and could, for that independent reason, have chosen to disregard her *ex parte* submissions.  This is likely the doctrine to which Ms. Carvlin alluded in her remarks when requesting that the Court withdraw Dr. Sours Edwards' *pro se, ex parte* submissions.  July 21, 2020 Tr. at 16:1–5 ("MS. CARVLIN:  Dr. Sours Edwards was represented by counsel, has always been represented by counsel, and any submission by court rules has to come through counsel.  So I would argue, first of all, that these documents were never submitted . . . .").

The content of the *ex parte*, *pro se* submissions by Dr. Sours Edwards are not relevant to the nature of the proceedings.  The public record provides ample information about the circumstances that prompted the submissions to the Court, and the Court's response to them.  In the midst of the COVID-19 pandemic, shortly after recovering from an illness, the defendant was having communication issues with her counsel.  She reached out to the Court with a *pro se, ex parte* submission, perhaps not aware of the rules regarding *ex parte* submissions to the Court, and the prospect that the submissions might be made public.  The submissions brought to light a communication breakdown with Dr. Sours Edwards' prior counsel.  Dr. Sours Edwards' incoming counsel, with whom she had found rapport, requested that the submissions not be considered by the Court.  All parties agreed.  The public can evaluate the fairness and integrity of the Court's proceedings and decision on the basis of the information available on the public record.

The Court acknowledges that some may be interested in seeing what a defendant in the position of Dr. Sours Edwards might choose to say to the Court in such straights.  Especially because her counsel advised that whatever Dr. Sours Edwards wrote was something that should not be considered by the Court.  The prospect of a *cri de coeur* written by a criminal defendant without the benefit of counsel may represent an enticing opportunity for an unfiltered look inside of the defendant's mind.  But evaluating the fairness and integrity of the Court's proceedings and decisions does not require disclosure of the content of those submissions.  Nor, in the Court's view, considering all of the circumstances, would it be a fair result for the defendant.

**IV.     Conclusion**

Because Dr. Sours Edwards' *pro se*, *ex parte* submissions are not judicial documents, the

application to unseal them is DENIED.

SO ORDERED.

Dated:  October 20, 2020

_____

GREGORY H. WOODS

United States District Judge