

**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

May 21, 2018

**BY ELECTRONIC MAIL**

Dr. Natalie Edwards
███████████
Providence Forge, VA  23140
███████@msn.com

    Subject:    Final Determination on Disclosure File No. DI-17-3700
                    Preliminary Determination on PPP File No. MA-17-3685

Dear Dr. Edwards:

       The U.S. Office of Special Counsel (OSC) has reviewed your filings concerning the U.S. Department of the Treasury (Treasury). We have made a final decision to close your disclosure file. We have made a preliminary decision to close your prohibited personnel practice (PPP) file. We are delaying our final decision on your PPP file for 13 calendar days so that you may submit a written response.

       You are a Senior Advisor in Treasury's Financial Crimes Enforcement Network (FinCEN). You allege that you have been retaliated against for whistleblowing. Specifically, in mid-2016, you openly resisted your leadership's efforts to transfer FinCEN employees to the Office of Intelligence and Analysis (OIA), a component of Terrorism and Financial Intelligence (TFI), as unlawful. You allege the FinCEN/TFI realignment would have had significant implications for national security, specifically domestic intelligence collection of financial information, and that other FinCEN employees similarly opposed the realignment for these reasons. You allege leadership dismissed your concerns and began treating you and your opposing colleagues with hostility. Specifically, you allege your leadership retaliated against you by revoking your security clearance and Public Key Infrastructure (PKI) access for 24 hours in September 2016 and then for 13 months starting June 2017, respectively; failing to consider your application for promotion in December 2016; and creating a generally hostile work environment for you.[1] You reported this alleged wrongdoing to your leadership, your agency's Office of Inspector General (OIG), and Congress all in mid-to-late 2016.

       Your disclosure to OSC alleges wrongdoing by both your agency and your agency's OIG. Specifically, in addition to the above allegations, you allege that then-Treasury

---

[1] In some communications to OSC, you have alleged that as many as 15 retaliatory personnel actions have been taken against you. Among your allegations, however, OSC was able to identify only these three as potential personnel actions covered under our statute. *See* 5 U.S.C. § 2302(a)(2)(A).

U.S. Office of Special Counsel
Dr. Natalie Edwards
Page 2 of 6

Secretary Jacob Lew lied to the House Financial Services Committee on September 22, 2016 by claiming no whistleblowers had raised concerns about the FinCEN/TFI realignment when you (and possibly others) had, in fact, raised concerns before the hearing. While you did not raise your concerns to the Secretary directly, you believe his staff would have made him aware prior to his September 2016 testimony. You further allege that agency leaders attempted to prohibit you and others from speaking to Congress about the realignment. As evidence, you reference an August 27, 2016 email from a Treasury Office of Legislative Affairs (OLA) employee to the then-FinCEN Chief of Staff, the Treasury Congressional Advisor, and several others stating the Office of Management and Budget (OMB) had instructed Treasury not to engage with Congress regarding the FinCEN/TFI realignment, and to instead refer inquiries to OLA. This email was later forwarded by an original recipient to your supervisor at FinCEN, who forwarded it your colleague, who forwarded it to you.

   Finally, you allege corruption at your agency's OIG. Before filing with OSC, you brought your allegations to OIG and worked closely with them for many months. OIG produced a report in October 2017 on one of these issues: the revocation of your (and many others') PKI access for approximately 13 months. You allege that this revocation not only caused a significant change in your job duties, but also harmed public safety by preventing you and others from responding to several terror incidents that occurred during that time. You alleged the revocation was a deliberate attempt, likely by TFI, to harm FinCEN employees. OIG disagreed. OIG's report concluded that, while the revocation was problematic, it was not the result of any ill motive by leadership but instead a failure to communicate that the PKI access certificates were about to expire. OIG also concluded that—again, while problematic—no harm resulted from you and your colleagues' inability to respond to certain incidents that occurred while your access was revoked. OIG also concluded that a "large number" of Treasury employees, beyond FinCEN, had their access revoked due to the communication failure. You strongly disagree with these findings. You allege the OIG investigation was a deliberate "cover-up" for the agency. A *BuzzFeed News* article reiterated some of your allegations against OIG—though the article referenced the underlying cause as a "bureaucratic turf war" between TFI and FinCEN, not retaliation against any particular employees; other than that article, we were unable to obtain from you additional information to support this allegation.[2]

   OIG issued a report on April 9, 2018 responding to the *BuzzFeed News* article. The report is part of OIG's "ongoing audit" of TFI and its collection of domestic financial information—the subject of your initial whistleblowing—and concluded that TFI's OIA was not illegally collecting or retaining domestic financial information. OIG did conclude, though, as you had initially alleged to your leadership, that OIA did not have approved

---

[2] In general, OSC has had difficulty obtaining information from you after our initial communications. While we understand you took care to submit a large swath of documentation— approximately 7,000 pages by your estimate—you also declined several times to further discuss or clarify that information by telephone. When we did request certain responses by email, your response generally referenced the 7,000 pages of information you had already provided without further specificity.

procedures in place for domestic data collection as required by Executive Order (EO) 12333; it recommended, and the agency agreed, to finalize those existing draft procedures for data collections.

I. <u>Disclosure</u>

OSC is authorized by law to determine whether a disclosure should be referred to the involved agency for investigation or review, and a report. OSC may refer allegations of violations of law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety. Disclosures referred for investigation and a report by the agency must include information sufficient for OSC to determine whether there is a substantial likelihood of wrongdoing. If OSC cannot make a likelihood determination, OSC will determine whether there is sufficient information to exercise its discretion to refer the allegations. OSC does not have the authority to investigate disclosures and therefore does not conduct its own investigations into disclosures. As a result, we rely heavily on our whistleblowers to provide us the information we need to make our determination.

As a general policy, OSC does not transmit allegations of wrongdoing to the head of an agency when the OIG for that agency has already investigated those same allegations. Based on OSC's review of the record, OIG appears to have reviewed and/or investigated all of your disclosures. We understand you allege that OIG's work has been incomplete and dishonest, but OSC does not have evidence to support your allegations. During our initial call, before OIG's report was issued, for example, you indicated OIG's explanation about the PKI access expiring was false because you never received any notice about the expiration. However, OIG's report credibly explained that you and others had not received the intended notice because of a communication failure. As you know, we sought more information both verbally and in writing from you but, based on what you provided, we simply do not have evidence to show by a substantial likelihood (our evidentiary standard) that OIG engaged in wrongdoing in its review or investigation of your disclosures. Under our general deferral policy, OSC will therefore defer to OIG's determinations on your allegations.

We reviewed the recording of then-Secretary Lew's Congressional testimony and other evidence to determine if the then-Secretary was on notice of your objections at the time he testified. We cannot conclude by a substantial likelihood that he was.[3]

We also further considered the email from the OLA employee outlining OMB's direction to Treasury on communicating with Congress about the FinCEN/TSI realignment. Because the email appears to be directing Treasury officials in their *official* capacities on an appropriations matter—as opposed to directing them in their individual capacities on their

---

[3] We also understand you have been in contact with the relevant Congressional committee since that time.

U.S. Office of Special Counsel
Dr. Natalie Edwards
Page 4 of 6

rights to communicate with or otherwise report suspected wrongdoing to Congress generally—OSC does not consider this to be an unlawful restriction on communications with Congress. In reaching this conclusion, OSC also considered that the email was shared with targeted high-ranking employees who, by virtue of their titles, were likely to be involved in the appropriations discussion in their official capacities, rather than broadly to all staff.

For these reasons, we will take no further action on these disclosures.

II.     Prohibited Personnel Practice

OSC is also authorized to receive and investigate allegations of prohibited personnel practices. You allege retaliation for whistleblowing. OSC analyzed these allegations for a potential violation of 5 U.S.C. § 2302 (b)(8) and (b)(9). It is a violation of section 2302(b)(8) for an agency official to take or fail to take, or to threaten to take or fail to take, a personnel action with respect to any employee for making a protected disclosure of information. Similarly, it is a violation of section 2302(b)(9) for an agency official to take, fail to take, or threaten to take or fail to take a personnel action with respect to any employee for engaging in protected activity, such as contacting OSC or the Office of Inspector General.

To establish whistleblower retaliation, OSC must demonstrate before the Merit Systems Protection Board (Board) that: (1) a protected disclosure of information was made or the employee engaged in protected activity; (2) the agency official had knowledge of the protected disclosure or activity; (3) a personnel action was taken or threatened; and (4) the protected disclosure or activity was a contributing factor in the personnel action at issue. If OSC establishes these elements, the agency may defend with clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure or activity by showing, for example, the strength of the evidence in support of the personnel action and the lack of a motive to retaliate against the employee.

Here, we do not believe we can make a case for whistleblower retaliation before the Board. Your reports to your leadership, OIG, Congress, and OSC all likely constitute "protected activity" or whistleblowing under the law. We also believe you can establish that your management knew about your whistleblowing regarding, at a minimum, the issues you raised directly to them. From there, however, we are unable to establish the remaining elements for a case.

First, OSC does not have the authority to review an agency's security clearance or access decisions, even if they are allegedly retaliatory or discriminatory. This is due to a series of court decisions beginning with a 1998 Supreme Court ruling that a security clearance was not a "personnel action" under 5 U.S.C. § 2302(a).[4] OSC similarly has no authority to review personnel actions—even if they would otherwise be within our

---

[4] *See Dep't of the Navy v. Egan*, 484 U.S. 518, 526-32 (1988); *Hesse v. Dep't of State*, 217 F.3d 1372, 1380 (Fed. Cir. 2000).

U.S. Office of Special Counsel
Dr. Natalie Edwards
Page 5 of 6

jurisdiction—when a security clearance is the basis for the action. Your temporary clearance and PKI access revocations—and any related personnel actions, like investigations or changes in duties resulting from the revocations—fall into this category. We unfortunately have no basis to further review these actions.

Next, regarding your application for promotion in December 2016, you acknowledged to your agency (and to OSC) that the application was submitted after the vacancy closed due to technical and time-zone issues while you were in Kuwait. We therefore believe the agency will be able to establish by clear and convincing evidence that it would have declined to review your application regardless of your whistleblowing. We also believe it will be difficult to establish causation, because the personnel office—not any managers who might be arguably implicated in your whistleblowing—declined the application.

Finally, we also do not believe we could establish, based on the evidence we have reviewed, that your management's harassment or hostility could constitute a personnel action under our governing law. The Board has set a high threshold for establishing this type of legal claim. Criticism and rudeness, according to the Board, are not enough to make a claim. We will therefore not pursue this further.

You also allege that Treasury attempted to unlawfully restrict your communications with Congress. OSC analyzed your allegations for a potential violation of 5 U.S.C. § 2302(b)(12). It is a violation of section 2302(b)(12) to take or fail to take any other personnel action if taking or failing to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles defined in 5 U.S.C. § 2301. It would be a violation of section 2302(b)(12) for an official with personnel action authority to take or fail to take a personnel action with respect to any employee for contacting a member or Congress, or to otherwise interfere with an employee's right to petition or provide information to Congress.[5]

The elements of proof of a section 2302(b)(12) violation are: (1) proof of a personnel action as defined in section 2302(a); and (2) proof of a violation of law, rule, or regulation implementing, or directly concerning, one of the merit system principles set out in section 2301. Here, we do not believe that we could demonstrate such a violation because, as discussed in the disclosure section of this letter, we do not believe we could demonstrate that Treasury violated the law in its August 2016 email.

\* \* \*

---

[5] This right is protected by 5 U.S.C. § 7211, which is considered to be a law that directly implements or concerns a merit systems principle.

**U.S. Office of Special Counsel**
Dr. Natalie Edwards
Page 6 of 6

    If you wish to comment on our findings, please ensure that we receive your response within 13 days. Otherwise we plan to close your prohibited personnel practice file and notify you of any additional rights you may have to file before the Board.

                                  Sincerely,



                                  Attorney
                                  Retaliation & Disclosure Unit
                                  ███████@osc.gov
                                  (202) 804-███

cc:    Joseph Schmitz, Esq., via e-mail ███████████████