

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 14, 2021

**BY ECF**

The Honorable Gregory H. Woods
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *United States v. Natalie Mayflower Sours Edwards*,
      19 Cr. 64 (GHW)

Dear Judge Woods:

The Government respectfully submits this letter in opposition to the defendant's letter motion, dated June 4, 2021, filed in the above-captioned matter (Dkt. No. 98) ("Def. Ltr."). In her letter motion, the defendant, subsequent to being sentenced, asks this Court to order that two publicly-filed documents, which have long been available on PACER, either be removed from PACER entirely or removed and then re-filed in redacted form, on the ground that each document purportedly was obtained and/or filed in violation of the Privacy Act. These requests are both untimely and meritless. Indeed, as set forth below, each fails on multiple grounds.

I.   Relevant Background

On July 9, 2020, in connection with this Court's consideration of how to handle the fact that the defendant had sent directly to the Court three documents, certain of which contained communications that appeared to be protected by the attorney-client privilege or corresponding work product protection, and that her then-current retained counsel had accordingly asked the Court to appoint independent counsel for the defendant, the Government submitted a letter, via ECF, to the Court. (Dkt. No. 55.) In its letter, the Government advised the Court that the defendant had approximately two days earlier made material misstatements, under penalty of perjury, in a filing to the administrative judge overseeing her Merit Systems Protection Board ("MSPB") claim, specifically, misstatements concerning developments in this case and the actions of this Court with respect to how to handle the documents that the defendant had sent to this Court.

The Government filed its letter both to ensure an accurate record and because, as it stated in its letter, it found the defendant's actions troubling and relevant to her sentencing. The Government enclosed, as Exhibit A to its letter, the defendant's filing to the MSPB, which was served on the Financial Crimes Enforcement Network ("FinCEN") by the defendant, and thereafter provided to the Government by FinCEN. (Dkt. No. 55-1 (the "MSPB Filing").) The defendant

Honorable Gregory H. Woods
United States District Judge
June 14, 2021
Page 2

did not inquire of the Government how it obtained the MSPB Filing or complain that it should only be filed under seal, and both the Government's letter and the MSPB Filing have remained publicly-available on PACER for nearly a year, and remain there now.

The defendant's MSPB claim was subsequently rejected, in a written decision, which was made public—as all such decisions are—by the MSPB when it was provided to and published by Westlaw at *Edwards v. Dep't of the Treasury*, M.S.P.B. No. DC-1221-20-0480-W-1, 2020 WL 4048396 (July 17, 2020). The decision noted that the defendant had disclosed Bank Secrecy Act-protected information in a filing before the MSPB. *Id.* at *3, 7. In the Government's view, this action assisted to demonstrate both the defendant's lack of remorse for her crime and the hollowness of certain arguments she made in her sentencing submission. Accordingly, the Government submitted the decision to the Court as Exhibit C to its sentencing submission filed in late October 2020. (Dkt. No. 82-3.)

II.   Applicable Law

   A.   The Privacy Act

The Privacy Act of 1974, commonly referred to as the Privacy Act, codified as amended at 5 U.S.C. § 552a, established a regime governing the collection, maintenance, use, and dissemination of information about individuals that is maintained in systems of records by federal agencies. In short, the Privacy Act prohibits the disclosure of a record about an individual from a system of records absent the written consent of the individual, unless the disclosure is pursuant to one of a number of statutory exceptions. *See generally Overview of the Privacy Act of 1974*, U.S. Dep't of Justice, Office of Privacy and Civil Liberties (2020 Ed.), https://www.justice.gov/Overview_2020/download.

Under the Privacy Act, a "record" is defined as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or photograph.

5 U.S.C. § 552a(a)(4); *see Bechhoefer v. U.S. Dep't of Justice*, 209 F.3d 57, 62 (2d Cir. 2000).

While this definition of record may be broad, under the plain language of the statute, "[t]he Privacy Act's restrictions on disclosure do not apply to every record under an agency's control or in its possession." *Bechhoefer v. U.S. Dep't of Justice*, 312 F.3d 563, 566 (2d Cir. 2002) ("*Bechhoefer II*"). Rather, "[t]hey apply only to a record 'which is contained in a system of records.'" *Id.* (quoting 5 U.S.C. § 552a(b)). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the

individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). The Second Circuit has approved of the Office of Management and Budget's interpretation of this definition as requiring a system with "an indexing or retrieval capability using identifying particulars... built into [it]" such that "the agency does, in fact, retrieve records about individuals by reference to some personal identifier." *Bechhoefer II*, 312 F.3d at 566. In short, "the prescriptions of the [Privacy] Act do not come into play whenever a document falls into the possession of an employee of a covered agency." *Id.*; *see also Henke v. Commerce*, 83 F.3d 1453, 1460 n.12 (D.C. Cir. 1996) ("[I]t is not sufficient that an agency has the *capability* to retrieve information indexed under a person's name, but the agency must *in fact* retrieve records in this way for a system of records to exist." (emphases in original)); *York v. McHugh*, 850 F. Supp. 2d 305, 306, 314-15 (D.D.C. 2012) (holding shared drive did not constitute system of records even though this method of storage could be searched by name).

The Privacy Act provides that an individual may bring a civil lawsuit to seek redress for an alleged Privacy Act violation. *See* 5 U.S.C. § 552a(g). As is relevant here, where an individual claims that his or her record, maintained in a system of records, has been improperly disclosed, he or she has the burden to demonstrate that

> "(1) the information is covered by the [Privacy] Act as a 'record' contained in a 'system of records;' (2) the agency disclosed the information; (3) the disclosure had an adverse effect on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was willful or intentional."

*Rooney v. Wittich*, 21 F. Supp. 2d 273, 281 (S.D.N.Y. 1998) (quoting *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992)); *see also Pierce v. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007). With respect to this last requirement, a negligent or inadvertent violation of the Privacy Act is not sufficient. *See, e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.'" (quoting *Deters v. U.S. Parole Comm'n,* 85 F.3d 655, 660 (D.C. Cir. 1984))).

### B. The Public's First Amendment and Common Law Rights of Access to Judicial Documents

The Supreme Court has held that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)). The "right of access is embodied in the First Amendment," and stems in part from the fact that "the criminal trial historically has been open to the press and general public." *Id.* at 603, 605.

Honorable Gregory H. Woods
United States District Judge
June 14, 2021
Page 4

The Supreme Court has further explained the principles underlying the constitutional right of access:

> [T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process-an essential component in our structure of self-government.

*Id.* at 606.

Following *Globe Newspaper*, the Supreme Court and the Second Circuit have held that the First Amendment right of access applies not only to criminal trials themselves, but to other aspects of criminal proceedings, including preliminary hearings, *see In Press-Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 13 (1986); pretrial suppression hearings, *see In re Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984); *voir dire* proceedings, *see ABC, Inc. v. Stewart*, 360 F.3d 90, 105-06 (2d Cir. 2004); plea hearings, *see United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); and sentencing hearings, *see United States v. Alcantara*, 396 F.3d 189, 191-92 (2d Cir. 2005).

As is relevant here, the Second Circuit also has held that the First Amendment right of access applies to "written documents submitted in connection with judicial proceedings that themselves implicate the right of access," *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), and to "briefs and memoranda" filed in connection with pre-trial and post-trial motions, *see United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989). The public also has a common law right of access to such documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

This does not mean, however, that any document filed by a party must be made publicly available, in whole or in part. As the Second Circuit has explained, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). The question is not whether a document has been filed, but rather, what is the nature of the document and purpose for which it was filed, specifically, whether it is a "judicial document," that is, one "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks omitted).

Accordingly, a court asked to determine whether a document filed should be filed in sealed form must engage in a two-step inquiry. First, the court must determine whether the document, in

Honorable Gregory H. Woods
United States District Judge
June 14, 2021
Page 5

whole or in part, is a "judicial document."[1] If the answer is yes, then the court must either order the document filed publicly or make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.* at 126. If such values are present, a court should consider whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *United States v. Amodeo*, 71 F.3d 1044, 1053 (2d Cir. 1995).

The Court's individual rules are in accord. *See* Individual Rules of Practice in Criminal Cases, Gregory H. Woods, U.S.D.J., Rule 7(C), https://www.nysd.uscourts.gov/sites/default/files/practice_documents/GHW%20Woods%20Criminal%20Practices%20November%2012%2C%202020%20Web.pdf.

III.   Discussion

   A.   The Defendant's MSPB Filing

The defendant's claim that the Government violated the Privacy Act by submitting her MSPB Filing to this Court publicly fails for multiple, independent reasons.

*First*, the claim is untimely. As described above, the MSPB Filing was submitted via ECF nearly a year ago, yet the defendant did not complain that such submission purportedly violated the Privacy Act until 10 days ago. That is far too long to wait before asking to remove something, long in the public domain, from PACER. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."); *see also id.* at 144 n.11 ("Once it is public, it necessarily remains public . . . . [because] 'Once the cat is out of the bag, the ball game is over.'" (citing *Calabrian Co. v. Bangkok Bank Ltd.*, 55 F.R.D. 82 (S.D.N.Y. 1972))).

*Second*, the claim ignores that an alleged violation of the Privacy Act is a matter to be pursued civilly (assuming that a plaintiff satisfies the requisite requirements, including, where applicable, first pursuing the claim administratively).[2] The defendant cites nothing in support of the proposition that the Privacy Act governs whether a document may be filed publicly in a criminal case—and her implicit assumption that the Privacy Act so governs would overturn

---

[1] Because a judicial document may implicate the common law right of access, but not the First Amendment right of access, and the analysis for whether sealing is warranted in the context of the latter is more stringent, in the appropriate case, a court may need to determine which right of access is at issue. *See, e.g.*, *United States v. Erie Cty. N.Y.*, 763 F.3d 235, 238-41 (2d Cir. 2014).

[2] The Privacy Act provides for where such a civil suit, if timely and otherwise proper, should be brought: "in the district court of the United States in the district in which the complainant resides, or has his [or her] principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552a(g)(5). Here, none of those courts appears to be the United States District Court for the Southern District of New York, although the defendant's claim fails even if she could properly bring it here.

decades of First Amendment case law, as described above. The defendant does not acknowledge that case law, much less attempt to show that the documents at issue here should have been filed under seal, in whole or in part.

*Third*, even if the claim were timely (and it is not) and even if the claim were properly brought before this Court (and it is not), the claim fails on the merits, for multiple reasons, including, but not limited to:

- Assuming *arguendo* that the MSPB Filing were a "record," the defendant, who bears the burden on her claim, must also show that it was maintained in and pulled from a "system of records" of FinCEN. But the MSPB Filing was served on FinCEN by the defendant herself, who determined its contents, and it was thereafter maintained by FinCEN's in-house lawyers for the purposes of defending FinCEN against the defendant. It was not, to the Government's knowledge, both put into and then pulled by FinCEN from a "system of records" within the meaning of the Privacy Act. *Cf., e.g.*, *Bechhoefer II*, 312 F.3d at 564, 566-67 (rejecting claim that a letter sent to the Drug Enforcement Administration was a "record" in a "system of records," irrespective of whether the letter-sender believed it would be maintained confidentially).

- In any event, the defendant fails to allege, much less demonstrate, an actual "adverse effect" from the Government's obtaining and public submission of the MSPB Filing, as she must. *Wittich*, 21 F. Supp. 2d at 281.

- The defendant also fails to allege, much less demonstrate, that even if public submission somehow violated the Privacy Act, the violation was so "egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Sussman*, 494 F.3d at 1122 (quoting *Deters*, 85 F.3d at 660). And it plainly was not. The defendant made multiple, material misstatements, under penalty of perjury, to the administrative judge overseeing her MSPB claim, concerning this very case. It was more than reasonable for FinCEN to conclude that it was proper to advise the Government, so that the Government could advise this Court, of these misstatements, and to provide a copy of the pertinent filing, which, again, was not

collected by FinCEN, but written and served on FinCEN by the defendant herself in the course of adversarial litigation.[3]

*Finally*, even if the claim were otherwise timely, cognizable, and supported, it still must be denied because the defendant effectively seeks injunctive relief, and that is not available for an alleged improper prior disclosure. *See Hastings v. Judicial Conference of U.S.*, 770 F.2d 1093, 1104 (D.C. Cir. 1985); *Clarkson v. IRS*, 678 F.2d 1368, 1375 n.11 (11th Cir. 1982); *Hanley v. Dep't of Justice*, 623 F.2d 1138, 1139 (6th Cir. 1980).

B. The Decision Rejecting the Defendant's MSPB Claim

The defendant's claim that the Government violated the Privacy Act by submitting the administrative decision denying her MSPB claim to this Court publicly also fails for multiple, independent reasons.

*First*, this claim too is untimely. As described above, this decision was submitted to the Court nearly 8 months ago, yet the defendant did not complain that such submission purportedly violated the Privacy Act until 10 days ago.

*Second*, again, the claim ignores that an alleged violation of the Privacy Act is a matter to be pursued civilly, not a basis to seek to remove from the public docket of a criminal case a document that plainly is subject to the First Amendment and common law rights of access to judicial documents, here, an indisputably relevant exhibit to a sentencing submission.

*Third*, again, even if the claim were timely (and it is not) and even if the claim were properly brought before this Court (and it is not), the claim fails on the merits, for multiple reasons, including those set forth above. It also fails because the decision about which the defendant complains was released publicly by the MSPB, on its own, for reasons having nothing to do with this case, consistent with the MSPB's regulation that decisions may be released "[t]o the public, including to the agency's Web site following issuance of a decision." 77 Fed. Reg. 65206, 65207, 2012 WL 5246733 (Oct. 25, 2012). Indeed, as the defendant acknowledges, the decision about

---

[3] Indeed, FinCEN's conclusion was particularly reasonable because the MSPB could have disclosed the defendant's filing for multiple relevant purposes, including (i) "[t]o an appropriate Federal or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order where there is an indication of a violation or potential violation of civil or criminal law or regulation"; and (ii) "[t]o the Department of Justice (DOJ) when: . . . The United States is a party to litigation or has an interest in such litigation and the use of such records is deemed to be relevant and necessary to the litigation, providing that the disclosure of the records is a use of the information contained in the records that is compatible with the purpose for which the records were collected, or approval or consultation is required." 77 Fed. Reg. 65206, 65206-07, 2012 WL 5246733 (Oct. 25, 2012); *see also* MSPB, https://www.mspb.gov/privacy/submitrequest.htm (noting, among other things, that records are subject to the Freedom of Information Act).

which she complains "is available to the public through Westlaw." (Def. Ltr. 2.) So are numerous other, similar decisions in Westlaw's Merit Systems Protection Board Initial Decisions database, which states that it "contains documents released by the Merit Systems Protection Board (MSPB)." *Merit Systems Protection Board Initial Decisions*, Thomson Reuters Westlaw Edge, http://1.next.westlaw.com/Browse/Home/AdminstrativeDecisionsGuidance/Personnet/PersonetAgencyDecisionsOpinions/MeritSystemsProtectionBoardInitialDecisions?originationContext=typeAhead&transitionType=CategoryPageitem&contextData=(sc.Default)#. Westlaw also publishes decisions of other executive branch adjudicatory bodies. *See Personnet Agency Decisions & Opinions*, Thomson Reuters Westlaw Edge, https://1.next.westlaw.com/Browse/Home/AdministrativeDecisionsGuidance/Personnet/PersonnetAgencyDecisionsOpinions?transitionType=Default&contextData=(sc.Default). The defendant has no more of a right to complain that a decision in which she lost should not be released publicly than does any other litigant before any other adjudicatory body, particularly when she was the individual who brought the matter before the adjudicatory body in the first place and engaged in misconduct before it.

In her letter motion, the defendant suggests that perhaps none of these decisions should have been released by the MSPB, because its electronic filing system is restricted to parties. (Def. Ltr. 2.) That suggestion is a red herring. As the Court is aware, the CM/ECF system in federal court is also restricted to parties, but that says nothing about whether judicial decisions must be released publicly. So too here. Indeed, although the Court need not reach the issue, the law does not just permit public release of adjudicative decisions by executive branch bodies, but may require such release. *See, e.g.*, *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 290 (2d Cir. 2012) ("The public's right of access to an adjudicatory proceeding does not depend on which branch of government houses that proceeding.").

Finally, again, even if the claim were otherwise timely, cognizable, and supported—and it is none of those things—it still must be denied because the defendant effectively seeks injunctive relief, and that is not available for an alleged improper prior disclosure. *See Hastings*, 770 F.2d at 1104; *Clarkson*, 678 F.2d at 1375 n.11; *Hanley*, 623 F.2d at 1139.

\*\*\*

For the foregoing reasons, the defendant's motions should be denied.

Honorable Gregory H. Woods
United States District Judge
June 14, 2021
Page 9

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney

By:   s/ Daniel C. Richenthal
        Kimberly J. Ravener
        Daniel C. Richenthal
        Assistant United States Attorneys
        (212) 637-2358/2109

cc:    (by ECF)

      Counsel of Record